# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| Bridges, Robert, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| | )   Case No. 18-727 |
| v. | )   Judge Griggsby |
| | ) |
| The United States, | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

## PLAINTIFFS' REPLY AND OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

 s/ David Ricksecker        
David Ricksecker
MCGILLIVARY STEELE ELKIN LLP
1101 Vermont Ave., N.W.
Suite 1000
Washington, D.C. 20005
(202) 833-8855 (Telephone)
dr@mselaborlaw.com
Counsel of Record

## TABLE OF CONTENTS

I.   PLAINTIFFS' RESPONSE TO THE DEFENDANT'S RESPONSE TO PLAINTIFFS'

     STATEMENT OF FACTS AND DEFENDANT'S PROPOSED FINDINGS OF

     UNCONTROVERED FACTS............................................................................1

   A. Plaintiffs Response to Defendant's Response to Plaintiffs' Statement of Facts....................1

   B. Plaintiffs' Response to Defendant's Statement of Facts.........................................2

II.  ARGUMENT .....................................................................................3

   A. The Travel Between Worksites at Issue Here is Work, and the Travel Regulations do not

      Apply. ......................................................................................4

   B. The Travel Between Worksites is Part of the Continuous Workday......................................9

   C. The MOUs Between the Union and the Agency Required Compensation for Travel to a

      Hospital Overtime Assignment If the Employee is Performing Work. ............................15

   D. The Plaintiffs are Entitled to Mileage Reimbursements.......................................18

   E. Plaintiffs are Entitled to a Three Year Statute of Limitations and Liquidated Damages for

      the FLSA Claims............................................................................19

III. CONCLUSION.....................................................................................21

# TABLE OF AUTHORITIES

**Cases**

*Barrentine v. Arkansas-Best Freight System*, 450 US 728, 740-41 (1981) ............................................. 20

*Bull v. United States*, 65 Fed. Cl. 407 (2005) ...................................................................... 21

*Gilmer v. Alameda-Contra Costa Transit Dist.*, 2010 U.S. Dist. LEXIS 3405 (N.D. Cal. Jan. 15, 2010). 17

*Havrilla, et al. v. United States*, 125 Fed. Cl. 454, 466 - 68 (2016)........................................ 23

*IBP v. Alvarez*, 546 U.S. 21, 37 (2005) ........................................................................ 8, 13

*Imada v. City of Hercules*, 138 F.3d 1294, 1296 (9th Cir. 1998)........................................... 9

*United Transp. Union Local 1745 v. City of Albuquerque*, 178 F.3d 1109 (10th Cir. 1999) .........15, 17, 20

*Whalen v. U.S,* 93 Fed. Cl. 579 (2010) .......................................................................... 14

**Statutes**

29 U.S.C. § 207 ...................................................................................................... 4

29 U.S.C. § 254 ................................................................................................... 11, 13

5 U.S.C. §§ 5541 .................................................................................................... 4

**Rules**

RCFC 56 ............................................................................................................. 4

**Regulations**

29 C.F.R. § 785.16 ................................................................................................. 17

29 C.F.R. § 785.35 ................................................................................................. 9

29 C.F.R. § 785.38 ........................................................................................... passim

29 C.F.R. §790.6 ................................................................................................ 8, 13

41 C.F.R. 301 ...................................................................................................... 4

5 C.F.R. § 551.422 ...........................................................................................6, 12, 13, 19

5 C.F.R. §422 ...................................................................................................... 6

5 C.F.R. §551.104 .............................................................................................. 8, 21

5 C.F.R. §551.411 ..........................................................................................8, 11, 13, 15

5 C.F.R.§551.401 .................................................................................................. 7

**FLRA Decisions**

*FCC Beaumont,* 70 FLRA 477 (2018) ........................................................................ 11

*FCI Talladega and AFGE Local 3844*, FLRA ALJ Dec. Rep. No. 134, 1998 WL 317633 (1998)........... 19

*U.S. DOJ, BOP, FCC Ft. Worth, Texas and AFGE Local 1287,* 70 FLRA 95 (2018)............................. 11

**Other Authorities**

Dept. of Labor Wage & Hour Advisory Memorandum No. 2006-2 ............................................. 13

Plaintiffs respectfully submit this reply memorandum in support of their motion for partial summary judgment as to defendant's liability for violations of the overtime pay requirements of Section 207(a) of the Fair Labor Standards Act ("FLSA"), Title V including 5 U.S.C. §§ 5541, *et. seq.*; 41 C.F.R. 300 *et seq.* and 41 C.F.R. 301 *et seq.*, and mileage reimbursement, as well as liquidated damages and application of a three-year statute of limitations to the FLSA claims. 29 U.S.C. § 207(a); Dkt. 33. The plaintiffs also respectfully oppose the defendants' cross-motion for summary judgment. Dkt. 38.

## I.    PLAINTIFFS' RESPONSE TO THE DEFENDANT'S RESPONSE TO PLAINTIFFS' STATEMENT OF FACTS AND DEFENDANT'S PROPOSED FINDINGS OF UNCONTROVERED FACTS

Plaintiffs Robert Bridges, *et. al.*, by their attorney, pursuant to Rule 56(c) of the Rules of the United States Court of Federal Claims (RCFC), submit this response to both the Defendant's Response to Plaintiffs' Statement of Facts and the Defendant's Statement of Facts.[1]

### A.  Plaintiffs Response to Defendant's Response to Plaintiffs' Statement of Facts

Paragraph 12. Whether an employee is mandated to work a hospital overtime assignment, or volunteers to work the hospital overtime assignment, the work at issue here is the same, with the exception that the employee who volunteers to work the overtime post and is then required to be at the hospital post of the overtime shift is not compensated for the time spent traveling to the hospital to relieve the outgoing officer.

Paragraph 13. Once a plaintiff accepts a hospital overtime assignment the plaintiff is required to work that assignment. In order to work the hospital overtime assignment after

---

[1] The defendant's denials to the plaintiffs' statement of facts are insignificant. The Court should consider any plaintiffs' statement of facts that are not denied as undisputed. *See* RCFC 56(e).

completing a shift at the prison, the plaintiff is required to travel to the hospital. If the plaintiff arrives late to the hospital overtime assignment the plaintiff is not compensated until he or she relieves the outgoing officer.

Paragraph 19. Once an employee accepts an overtime assignment, the employee is required to work that assignment. Under the FLSA, no employee can volunteer to work without compensation, and the FLSA does not distinguish between mandatory and voluntary overtime work.

Paragraph 20.  The defendant denies this paragraph with no discussion, rationale or specific objection. Strangely, the defendant notes the same facts in its statement of facts, noting the same MOU. Def. Brief p. 7 -8.  The language cited in the paragraph are direct quotes from the MOU and email.

### B.  Plaintiffs' Response to Defendant's Statement of Facts

In the second paragraph of Defendant's Statement of Facts (page 5)[2] admit with the exception that once a plaintiff accepts an overtime assignment at a local hospital, the plaintiff is required to work the overtime assignment.

Third Paragraph (page 5). Admit with the exception that during the process of exchanging equipment and information on the hospital post, although both officers are performing the work involved with the exchange, only one officer would receive compensation for that work. *See* Piersen Transcript, pp. 202-203.

Fourth Paragraph (p. 6). Admit with the exception that for a time period during the recovery period of this case, the FCI Milan Day Watch shift ended at 2:35pm.

---

[2] The defendant's statement of facts is not numbered.

Sixth Paragraph (p. 7). Admit with the exception that only one officer on the hospital overtime post receives compensation at a time even though both are working on post. *See* Piersen Transcript 202-203.

Final paragraph (p. 10). Admit with the following exception that on May 3, 2018 the Union withdrew the grievance.

## II.    ARGUMENT

The question here is fairly simple, is the time spent by the plaintiffs traveling between the prison and hospital assignments compensable worktime? The defendant's argument is based on four flawed prongs. First, that the travel between worksites during the continuous workday is somehow commuting, when actually, commuting involves home to work travel, not travel between worksites during the continuous workday. The second argument is that because accepting the overtime assignment is voluntary and the travel is outside of the regular shift, the travel is not compensable. This argument fails because it relies on OPM's travel regulations which do not apply to the travel at issue here.[3] The travel regulations, including 5 C.F.R. §551.422, only

---

[3] Outrageously, the defendant states that "the plaintiffs in this case rely on FLSA travel regulations, 5 C.F.R. §422, to support the assertion that they are entitled to FLSA overtime." Def. Brief p. 16. This is not true. To the contrary, the plaintiffs explained that:

> the provisions of 5 C.F.R. § 551.422(a) apply to circumstances where the employee travels outside of his or her official duty station, providing that "an agency may prescribe a mileage radius of not greater than 50 miles to determine whether an employee's travel is within or outside the limits of the employee's official duty station for determining entitlement to overtime pay for travel under this part." 5 C.F.R. § 551.422(d). ***Here, of course, the travel at issue is all less than 50 miles than the Institution and is, therefore, part of the employee's official duty station, rendering the regulation facially inapplicable.***

Plaintiffs' Brief, p. 21. (emphasis supplied).

.

applies if the travel is outside of 50 miles form the duty station. Any argument regarding the

voluntary nature or travel outside of regular shifts fail because the FLSA has no such

requirements in determining compensability. The third prong is that the Union and Agency

agreed such time is not compensable and that the MOU waives the plaintiffs' FLSA rights. If it

was permissible for employees to waive their FLSA rights, which it is not, the MOU itself

clearly contemplates such travel that is considered hours of work and must be compensated.

Finally, the defendant argues that the travel between worksites between one regular shift and one

overtime shift is not part of the continuous workday. All four prongs fail.

### A.  The Travel Between Worksites at Issue Here is Work and the Travel Regulations Do Not Apply.

At the onset of its argument, the defendant correctly sets out the law that "[t]he FLSA

requires employers to pay their employees for all 'hours worked.'" Def. Brief p. 12. The

defendant also cites OPM regulation:

> All time spent by an employee performing an activity for the benefit of an agency and
> under the control or direction of the agency is "hours of work." Such time includes:
>
> > (1) Time during which an employee is required to be on duty;
> > (2) Time during which an employee is suffered or permitted to work; and
> > (3) Waiting time or idle time which is under the control of an agency and which is
> > for the benefit of an agency.

5 C.F.R. §551.401(a). When considering the defendant's argument, the plaintiffs ask that you

note that this definition says nothing about whether the work performed was voluntary or

mandatory. Indeed, as the defendant notes in its brief, work that is "'suffered and permitted' is

any work performed by an employee for the benefit of an agency, whether requested or not,

provided the employee's supervisor knows or has reason to believe that the work is being

performed and has an opportunity to prevent that work from being performed." Def. Brief, p. 12, citing 5 C.F.R. §551.104.

Simply put, as the defendant notes, the employer must pay for all "hours worked." 29 U.S.C. § 207(a). This includes "***any*** work performed by an employee for the benefit of an agency." 5 C.F.R. § 551.104 (emphasis supplied). The defendant must compensate its employees for all hours of work that it "suffers or permits" them to perform. In other words, an employee cannot volunteer to perform work for free. Thus, regardless of whether the employer requested or ordered that the work be performed, it is liable to compensate plaintiffs for that work.

When assigning overtime here, a management official, after reviewing the overtime list and the roster program, offers an employee a hospital overtime assignment at a local hospital. The supervisor knows or should know that once the employee accepts the overtime assignment, the employee is required to work that assignment. The supervisor also knows if that overtime assignment is an hour or less from that employee's regularly scheduled shift according to the roster program and overtime assignment process. Therefore, the supervisor knows or should have known that the employee assigned to work an overtime hospital assignment will be required to drive to the hospital overtime assignment immediately after he or she leaves their regular shift at the prison. Under the law cited above, the time at issue here is compensable.

The continuous workday rule requires employers to compensate employees for all activities that occur between the first and last activities of the employees' workday. *IBP v. Alvarez*, 546 U.S. 21, 37 (2005); 29 C.F.R. §790.6, 5 C.F.R. §551.411(a). This "continuous workday" rule requires that an employer compensate its employees for ***all*** activities that occur between the ***first and last activities of the employee's workday***. *Id.* at 28 (citing 29 C.F.R. §790.6 (a)). *See also* 5 C.F.R. § 551.411 (a) (OPM's definition of "workday" is "the period

between the commencement of the principal activities that an employee is engaged to perform on a given day, and the cessation of the principal activities for that day").

Under the facts here, the law requires this time be compensable for one simple reason — the plaintiffs are working. The plaintiffs are traveling between worksites as part of the continuous workday. The plaintiffs perform this necessary job duty without compensation. Although the defendant's 30(b)(6) witness testified that while employees cannot volunteer to work without compensation, the defendant refuses to pay the plaintiffs for this work here because the plaintiffs volunteered to work the overtime assignment. The defendant highlights this by noting that it pays employees for the same work performed if the hospital overtime assignment is mandatory. Of course, whether an employee volunteers to work overtime or is mandated to work overtime does not change whether the work is compensable under the FLSA. Under the FLSA, all work must be compensated.

The defendant makes several bold, and wrong, arguments in its brief regarding this case. First, it argues that "[p]laintiffs' travel to and from local hospitals so that they can perform voluntary overtime work is commuting time and is not compensable under the FLSA." Def. Brief, p. 13. This is incorrect, as the travel at issue is not commuting time. OPM defines commuting time "for FLSA-covered employees, normal commuting time from home to work and from work to home is not hours of work. (See 5 CFR 551.422(b).)" *See* OPM Fact Sheet: Hours of Work for Travel, https://www.opm.gov/policy-data-oversight/pay-leave/work-schedules/fact-sheets/hours-of-work-for-travel/. *See also Imada v. City of Hercules*, 138 F.3d 1294, 1296 (9th Cir. 1998) ("Ordinary home to work travel is not compensable under the FLSA, regardless of whether or not the employee works at a fixed location."); 29 C.F.R. § 785.35 ("An employee who travels from home before his regular workday and returns to his home at the end

of the workday is engaged in ordinary home to work travel which is a normal incident of employment. This is true whether he works at a fixed location or at different job sites."). The travel at issue here is not home to work or work to home commuting travel. Plaintiffs have not made any demand for compensation for occasions when the plaintiffs travel from home to the local hospital to work an overtime post, or their commute time home. The claim here only involves travel between job sites that are part of the continuous workday.[4] Simply put, the travel at issue is not commuting time at all. Rather, the travel at issue involves travel from job site to job site during the continuous workday. *See* OPM Fact Sheet # 22 ("Time spent by an employee in travel as part of their principal activity, such as travel from job site to job site during the workday, is work time and must be counted as hours worked"). All references to commuting time made by the defendant for this travel must be struck or ignored.

Second, the defendant argues that there is no requirement for "plaintiffs to travel to the local hospitals, or to work during a commute to and from the hospitals." Def. Brief, p. 13. This statement is incorrect on both counts, as the plaintiffs are indeed required to travel to the hospital assignment from the prison and they do perform work. Here, while on most occasions an overtime assignment at the hospital is voluntary, once the plaintiff accepts the voluntary overtime assignment, he or she is then ***required to actually work that assignment***. To work that overtime assignment, they are ***required to travel to the hospital***. The travel between job sites to work the overtime assignment is required once the plaintiff accepts the overtime assignment. The plaintiff cannot simply decide not to work the shift once he or she has accepted the assignment, or to simply not show up to work the hospital overtime assignment. Indeed, the DOL finds this

---

[4] For this reason, the defendant's reliance on *Barth*, *Easter*, *Adam*s, and *Bobo* is misplaced, as each of those cases involved actual commuting, *i.e.*, "home to work" travel.

precise sort of travel is work. DOL has stated that "travel that is all in a day's work" is compensable. 29 C.F.R. § 785.38. DOL's regulation explicitly states that, when an employee finishes working at one job site and then travels to another, the travel between work sites is compensable. Specifically, DOL's regulation provides that:

> Time spent by an employee in travel as part of his principal activity, ***such as travel from job site to job site during the workday***, must be counted as hours worked. Where an employee is required to report at a meeting place to receive instructions or to perform other work there, or to pick up and to carry tools, the travel from the designated place to the work place is part of the day's work, and must be counted as hours worked regardless of contract, custom, or practice.

*Id*. (emphasis supplied).[5] In addition, the travel at issue here is not subject to the Portal to Portal Act exemption, as this is not travel to the place of performance of principal activities and is not preliminary or postliminary to the principal activities, but is actually part of the principal activities that are part the continuous workday. *See* 29 U.S.C. §254 (a). Thus, this travel between job sites is required to be performed by the plaintiffs once it is accepted and is compensable as travel from job site to job site during the workday.

As anticipated, the defendant mistakenly relies on *U.S. DOJ, BOP, FCC Ft. Worth, Texas and AFGE Local 1287,* 70 FLRA 95 (2018), and also *FCC Beaumont,* 70 FLRA 477 (2018). First, FLRA decisions are non-precedential and non-binding on this Court. Further, here, with detailed dissents and scant majority analysis, the decisions are entitled to little, if any deference. Further, the FLRA's decision was addressed in detail in the plaintiffs' brief. *See* Pltf. Brief pp.

---

[5] Although cited above, the OPM defines the "workday" as "the period between the commencement of the principal activities that an employee is engaged to perform on a given day, and the cessation of the principal activities for that day." 5 C.F.R. § 551.411 (a). The travel at issue here is clearly part of the workday, as the plaintiff for that day starts principal activities at the prison and ends their principal activities at the hospital.

19-23. The defendant relies on the FLRAs findings that because whether or not accepting an overtime assignment was voluntary and not part of the regular workweek that the work was not required and thus not compensable. As noted in the plaintiffs' brief, the FLRA's finding that the travel from one work site to another is not "required," does not comport with the facts. Here, overtime assignments at the outside hospital are offered pursuant to the overtime procedures. If an individual accepts the offered overtime assignment, he or she is required to travel from the institution at the end of their shift to be on post at the hospital for that shift. Simply put, an employee who voluntarily signs up for an overtime shift are required to get to the hospital to work the overtime shift. Thus, the FLRA's finding that this travel is not "required" is simply incorrect. The shifts **must** be covered by an employee and the employee **must** get from the Institution to the hospital. Additionally, the provisions of 5 C.F.R. § 551.422(a) **only** apply to circumstances where the employee travels outside of his or her official duty station, providing that "an agency may prescribe a mileage radius of not greater than 50 miles to determine whether an employee's travel is within or outside the limits of the employee's official duty station for determining entitlement to overtime pay for travel under this part." 5 C.F.R. § 551.422(d). Here, of course, the travel at issue is all less than 50 miles than the Institution and is, therefore, part of the employee's official duty station, rendering the regulation facially inapplicable.

   **B.  The Travel Between Worksites is Part of the Continuous Workday**

   The defendant argues that the workday only includes eight hours of a regular shift **and no other work performed beyond that eight hour shift**. See Defendant's Brief, p. 21 ("the **workday** commences with the beginning of plaintiff's eight-hour workday at FCI Milan, and ends with the conclusion of the last activity **during** that eight hour shift"). This narrow definition is a complete fiction and is unsupported in law or regulation and ignores OPM and DOL guidance. In reaching this definition, the defendant conflates the OPM's definition of workday with regular working

hours. There is no reason, however, to conflate the two definitions. The defendant correctly notes that OPM defines the **workday** as "the period between the commencement of the principal activities that an employee is engaged to perform on a given day, and the cessation of the principal activities for that day." 5 C.F.R. § 551.411(a). The defendant, however, then notes OPM's definition of "regular working hours" to reach its fabricated definition of the workday. Whether or not work performed is part of regular working hours is immaterial to whether or not the work is compensable under the FLSA or the continuous workday rule. As explained in the plaintiffs' opening brief, under the continuous workday rule, activities are compensable under the FLSA as long as they occur *after the workday has begun and before it has ended*, and an employer compensate its employees for **all** activities that occur between the first and last activities of the employee's workday. *Alvarez*, 546 U.S. at 28-29 (citing 29 C.F.R. §790.6 (a)). *See also* DEPT. OF LABOR WAGE & HOUR ADVISORY MEMORANDUM NO. 2006-2, at 2 ("[T]he Supreme Court's central holding in *Alvarez* is that time spent after the beginning of the first principal activity, including time spent walking is not affected by section 4(a) of the Portal-to-Portal Act, 29 U.S.C. § 254 (a), and is therefore compensable.").

Furthermore, in the instant case, "regular working hours" are irrelevant as the claims at issue do not relate to travel outside of the 50-mile duty station but only relates to travel between job sites as part of the continuous workday. Thus the travel regulations, including 5 C.F.R. § 551.422, simply do not apply.[6] The travel regulations have no bearing on the claims in the

---

[6] As noted in the plaintiffs' opening brief (page 21), the provisions of 5 C.F.R. § 551.422 only apply to circumstances where the employee travels **outside** of his or her official duty station, providing that "an agency may prescribe a mileage radius of not greater than 50 miles to determine whether an employee's travel is within or outside the limits of the employee's official duty station for determining entitlement to overtime pay for travel under this part." 5 C.F.R. § 551.422(d). Here, of course, the travel at issue is all less than 50 miles from the prison ("duty

instant case, as the uncompensated work at issue part of the continuous work day, not for travel within 50 miles of the duty station.

In continuing its argument that working double shifts is somehow not part of a continuous workday, the defendant misapplies this Court's holding in *Whalen v. U.S,* 93 Fed. Cl. 579 (2010). While it is true that the Court in *Whalen* used the term "continuous workday" as applied to air traffic controllers, the context of that case is much different than the present case.[7] The *Whalen* court did not actually perform any analysis regarding the continuous workday, but rather focused on preliminary and postliminary work performed before and after a regular shift. The issue in *Whalen* was whether the air traffic controller plaintiffs should be compensated for the time spent waiting in line in their vehicles to go through a security checkpoint when entering the Air Force base, before driving to their radar station worksites within the Air Base. Those claims related to the plaintiffs' contention that these pre- and post-shift security activities and post security driving to the worksite were compensable. That is not the claim here – as the plaintiffs are not arguing the compensability of pre- or post-shift work. There is no dispute that the plaintiffs at issue in this case began working and indeed worked a compensable regular shift at FCI Milan. There is no dispute that they then worked an overtime shift at a duty post at a local hospital. The plaintiffs are not arguing whether they should be compensated for the time spent going through security screening and walking to their post inside the prison is compensable.

---

station") and is, therefore, part of the employee's official duty station, rendering the regulation inapplicable.

[7] Interestingly, the defendant misstates the holding of the *Whalen*. The defendant claims that the *Whalen* court found that all time spent upon arriving at "Edwards Air Force Base" is compensable, but the holding actually said that waiting in line, going through security and driving while in Edwards Air Force Base to TRACON (the Air Traffic controllers radar station worksite within Edwards Air Force base) was not compensable, and the compensable workday starts upon arriving at the radar station worksite.

Rather, the dispute lies in whether the correctional workers' time spent traveling between one assigned shift at the prison and a second assigned overtime shift worked at a local hospital and time spent relieving the outgoing officer at the hospital is compensable as part of the continuous workday. For *Whalen* to be comparable, the air traffic controllers would work an 8-hour shift (for example, 7AM to 3PM) at the TRACON radar station, leave that radar station and travel to a different radar station 20 miles away and relieve the outgoing air traffic controller to work an overtime shift at the other radar station from 4pm to 12pm), and whether that time spent traveling to the second worksite is compensable as part of the compensable workday. There is no dispute here that the plaintiffs' workday has started– the only question is whether all subsequent travel and work performed must be compensated until that workday ends. For these reasons, *Whalen* analysis regarding the continuous workday is not instructive.

The defendant also faults the plaintiffs for relying on *Alvarez* and *Bonilla*, arguing that somehow because the plaintiffs are working two shifts as part of the workday that this Court should ignore this case law precedent. There is no support whatsoever for the defendants' position. There is no reference to shifts in the definition of workday. Again, OPM defines the **workday** as "the period between the commencement of the principal activities that an employee is engaged to perform on a given day, and the cessation of the principal activities for that day." 5 C.F.R. § 551.411(a). It makes no mention of whether these principal activities are part of one shift, two shifts, or half a shift. Indeed here, there is no meaningful gap between shifts, and the defendants rightly does not argue the gap between shifts is great enough that the plaintiffs can engage in their own personal pursuits.[8] Furthermore, the defendant's argument is further

---

[8] *See e.g., United Transp. Union Local 1745 v. City of Albuquerque*, 178 F.3d 1109 (10th Cir. 1999) (relying on the DOL regulation regarding time that is "off-duty," which states that "[p]eriods during which an employee is ***completely relieved from duty and which are long***

contradicted by DOL, stating that "travel that is all in a day's work" is compensable. 29 C.F.R. §

785.38. DOL's regulation explicitly states that, when an employee finishes working at one job site

and then travels to another, the travel between work sites is compensable. Specifically, DOL's

regulation provides that:

> Time spent by an employee in travel as part of his principal
> activity, ***such as travel from job site to job site during the
> workday***, must be counted as hours worked. Where an employee is
> required to report at a meeting place to receive instructions or to
> perform other work there, or to pick up and to carry tools, the
> travel from the designated place to the work place is part of the
> day's work, and must be counted as hours worked regardless of
> contract, custom, or practice.

*Id*. (emphasis supplied). Again, there is no dispute that the plaintiffs engaged in principal

activities which started the workday when working their first shift at FCI Milan and that they

continued performing principal activities on the second overtime shift during that workday.

Thus, all "time spent by an employee in travel as part of his principal activity, ***such as travel***

***from job site to job site during the workday***" is compensable. Thus, the time at issue here must

be paid.

Finally, the defendant's attempt to distinguish the *City of Albuquerque*, 178 F.3d 1109

(10th Cir. 1999) decision also fails. The defendant argues that here, unlike *City of Albuquerque*,

the "plaintiffs' regular workday is not divided into shifts." Ignoring the fact that the statute and

regulations make no mention whatsoever of "shifts" or "regular workday" in analyzing the

compensability of work performed, it ignores the fact that indeed, the plaintiffs' workday here,

like *City of Albuquerque*, is actually divided into shifts. In *City of Albuquerque*, the plaintiff bus

---

***enough to enable him to use the time effectively for his own purposes are not hours worked***. ...
Whether the time is long enough to enable him to use the time effectively for his own purposes
depends upon all of the facts and circumstances of the case" citing 29 C.F.R. § 785.16)
(emphasis supplied).

drivers worked a 3 hour shift, had a 3 hour break, and then worked a 5 hour shift. The Court

found the time spent traveling between worksites was compensable. As the *City of Albuquerque*

Court analyzed:

> The drivers' "principal activity" is the driving of their shifts. This is so whether they drive a split shift or a straight shift within a single workday. "Time spent by an employee in travel as part of his principal activity, such as travel from job site to job site during the workday, must be counted as hours worked." 29 C.F.R. § 785.38. In our view, the shuttle time to and from relief points at either end of the split shift period is travel time which is "part of [the drivers'] principal activity."
>
> Indeed, we would, in essence, be holding that each shift is a principal activity in a separate workday, were we to hold that shuttle time to and from each shift is excluded as ordinary commuting time under the Portal-to-Portal Act. The regulations define "workday" under the Act as follows:
>
> "Workday" . . . means . . . the period between the commencement and completion on the same workday of an employee's principal activity or activities. It includes all time within that period whether or not the employee engages in work throughout all of that period.
>
> 29 C.F.R. § 790.6. We agree with the district court that we should not turn a single 24-hour period into essentially two 24-hour periods, simply because the drivers drive two shifts separated by a non-compensable off-duty period.

*City of Albuquerque,* 178 F.3d 1109, 1119 (10th Cir. 1999). Here, the plaintiffs work 8-hours at

the prison, proceed to travel 15 miles and relieve the outgoing officer at the hospital during a one

hour or less time period, and proceed to work another 8-hours on the hospital post. This is akin to

*City of Albuquerque*, with the only exception that the plaintiffs have much less time to travel

between worksites in the present case (3-hours in *City of Albuquerque* compared to one hour or

less here), and thus here, the plaintiffs are not relieved from duty "***long enough to enable him to***

***use the time effectively for his own purposes.***" *City of Albuquerque* at 1116 (*citing* 29 C.F.R. §

785.16 (emphasis supplied). Thus, this time spent *en route* to the hospital and relieving the

outgoing officer must be compensated. *See also*, *Gilmer v. Alameda-Contra Costa Transit Dist.*,

2010 U.S. Dist. LEXIS 3405 (N.D. Cal. Jan. 15, 2010) (Notably, in *Gilmer*, the City

14

compensated the employees for the time between shifts when there was one hour or less and only took the employees off-the-clock when there was more than an hour between shifts).

C.  **The MOUs Between the Union and the Agency Required Compensation for Travel to a Hospital Overtime Assignment If the Employee is Performing Work.**

The defendant makes another bold and incorrect statement that "the plaintiffs and the Agency agreed that travel time to and from FCI Milan and a local hospital does not constitute hours of work." Defendant's Brief, p. 19. First, the Memorandum of Understandings (MOU) that the defendant relies upon for this argument state nothing of the sort. The MOU, between AFGE Local 1741 and the Agency, actually includes an agreement to compensate employees for the time at issue in this case. Indeed, the MOU clearly states that the parties agree to pay employees working overtime away from the duty station when they are performing work. Ex. 1, Tr. 90-91, Ex. 5 ("If the assignment is located away from the official duty station within the local commuting area (i.e., outside hospital), time spent traveling will not be considered hours of work, unless the employee is required to drive a government vehicle or perform work while traveling."). The MOU language speaks for itself.

Based on this language, travel from a plaintiffs' home to an overtime assignment at a local hospital would not be compensable, as the plaintiff would not be performing work. The plaintiffs here, however, are not seeking to be compensated for travel from home to the local hospital, or travel from the hospital back home. Indeed, the MOU contemplates the precise type of travel at issue here that is part of the continuous workday and states that if the employee is "required to … perform work while traveling" that travel is compensable. As noted above, the travel time at issue in this case must be "counted as hours of work" as it is all part of the continuous workday. *See* 29 C.F.R. § 785.38 ("[t]ime spent by an employee in travel as part of his principal activity, ***such as travel from job site to job site during the workday***, ***must be***

15

*counted as hours worked*.") Thus, this travel between worksites must be counted as hours of work. Indeed the defendant did exactly that – compensating employees for travel from the prison to the hospital –  only to later order its staff to abruptly violate the MOU, the FLSA and Title V. *See e.g*., Ex. 7 ("It has come to light that staff who have been assigned to a post at the local hospital are being compensated to travel to/from the hospital. **This practice has to stop immediately**.")(bold in original).

Further, the defendant's reliance on the non-precedential ALJ decision  *FCI Talladega and AFGE Local 3844*, FLRA ALJ Dec. Rep. No. 134, 1998 WL 317633 (1998) is misplaced. In *FCI Talladega*, the issue was whether it was an Unfair Labor Practice (ULP) for the Agency to unilaterally stop providing government vehicles and paying employees to travel to the hospital assignments.  First, the FLRA ALJ mistakenly relied on 5 CFR 551.422(a) which only applies to travel of more than 50 miles from the duty station, something that is inapplicable here (certain hospital trips were more than 50 miles away from the duty station in *FCI Talledega* while others were not). Second, the past practice in *FCI Talladega* was the practice of providing a government vehicle and overtime compensation for every overtime shift at the hospital, including overtime shifts on employees' days off. This is akin to home to work travel, and therefore compensation is not required if less than 50-miles from the duty station. For these reasons, the decision is inapplicable to the travel here that is part of the continuous workday.

The time that employees spend performing work at the prison is compensable work, as is the time that the employees spend performing work at the hospitals. The Agency compensates the employees for both of these shifts. The Agency, however, fails to compensate the employees for the time that they spend traveling between the two worksites. Indeed, management officials at FCI Milan signed a MOU agreeing to consider time spent traveling to an assignment away from

the official duty station if the employee is required to "perform work while traveling." Ex. 5. That is exactly the case here. The time spent traveling at issue here is all part of the continuous workday. *See* 29 C.F.R. § 785.38 ("[t]ime spent by an employee in travel as part of his principal activity, ***such as travel from job site to job site during the workday***, must be counted as hours worked.") Thus, this travel must be counted as hours of work. Again, the plaintiffs are not seeking to be compensated for travel from home to the local hospital, or travel from the hospital back home. They are seeking to be compensated for workdays in which they work a 17 hour, double-shift, and are only paid for 16 hours. This violates exactly what the MOU requires.

As discussed above, travel is all in a day's work and compensable when employees travel between work sites. 29 C.F.R. § 785.38. The U.S. Department of Labor posits: "[t]ime spent by an employee in travel as part of the principal activity, such as travel from job site to job site during the workday, is work time and must be counted as hours worked." Ex. 8 (DOL Wage and Hour Factsheet). This is true anytime the employee is unable to use the time for purely personal pursuits. *City of Albuquerque*, 178 F.3d at 1117-1118. Here, the Defendant concedes that employees such as the plaintiffs perform work both at posts within the prison and at posts in local hospitals, and has presented ***no evidence*** that the employees at issue are able to do anything other than travel from the prison to their hospital posts in the time between assignments.

Finally, to concur with the defendant's position regarding the MOU, the Court would have to find that the Union and Employer simply waived the bargaining unit employees' FLSA rights. This is impermissible. The Supreme Court found that rights under the FLSA prevail over conflicting provisions in a collective bargaining agreement or other agreements. *Barrentine v. Arkansas-Best Freight System*, 450 US 728, 740-41 (1981). Just as the Union and Employer could not agree in an MOU to pay employees less than the minimum wage under the FLSA, the

17

parties cannot agree to not compensate employees for actual work performed.  Indeed, the U.S.

Court of Federal Claims addressed this issue.  *See Bull v. United States*, 65 Fed. Cl. 407 (2005).

In that decision, the court noted that the regulations implementing FLSA, 5 C.F.R. § 551.

401(a)(2), in effect at the time the an Agreement between the Union and Employer were

executed, stated that all time spent by an employee performing an activity for the benefit of an

agency was compensable under the FLSA, and that such time included time during which an

employee was suffered or permitted to work. *Id*.  The court found that the Agreement could not

be applied to avoid paying overtime compensation to employees for the time during which the

employees were suffered or permitted to work because doing so would contravene an existing

government-wide regulation by which the parties to the Agreement were governed. *Id*.

Moreover, applicable case law underscored the labor law policy that substantive rights afforded

employees under the FLSA could not be prospectively waived.  *Id*.  Here, it is clear that the

plaintiffs travel between worksites is considered hours of work as part of the continuous

workday, and doing so constitutes work, and therefore they must be compensated.

### D.  The Plaintiffs are Entitled to Mileage Reimbursements

The defendant's argument to avoid otherwise mandatory mileage reimbursements for the

plaintiffs' use of their personal vehicles to travel between worksites as part of the continuous

work day is that the use of their personal vehicle was not for "official business" and use of the

personal vehicle was not "authorized or approved by the Government." Defendant's Brief, p 23.

This argument is without merit.

Again, the plaintiffs are not seeking mileage reimbursement for regular commuting time.

For example, if the plaintiff is assigned an overtime hospital shift on their day off, the plaintiff is

not seeking compensation or mileage reimbursement for their commute form home to the

hospital. What the plaintiffs are seeking mileage reimbursement for is for the travel between worksites as part of the continuous workday.

Here, the defendant sets the regular schedule through the roster program, and is aware of the regularly schedule shifts for the Group 1 (those with an hour between their regular shift and the Hospital Overtime Shift) and Group 2 plaintiffs (those with less than an hour between their regular shift and the Hospital Overtime shift). The defendant offers the overtime opportunities to the Group 1 and Group 2 plaintiffs, knowing that their regularly scheduled shift ends an hour or less before the hospital overtime assignment. The defendant still permits the plaintiffs to work the overtime shifts and requires them to somehow get from their regular shift at the prison to the overtime shift at the hospital within the hour (or less). Obviously, the plaintiffs must use their personal vehicles to get to the overtime shift at the hospital. Therefore, by assigning the hospital overtime post, the defendant knows that the employee will use their personal vehicle to travel between worksites during the continuous workday – the Agency simply does not want to pay for that work travel. The time spent traveling between worksites is work and as detailed above is therefore compensable – and the fact that the plaintiffs' travel is work, the travel is thus "official business." Both the regular shift and the overtime assignment were "authorized and approved" by the Government (and indeed requested to be performed by the Government). For these reasons, the required travel between worksites was approved and authorized by the Government and the mileage must be reimbursed by Agency policy.

## E.  Plaintiffs are Entitled to a Three Year Statute of Limitations and Liquidated Damages for the FLSA Claims

Rather, the defendant argues that the travel time between worksites as part of the continuous workday was not work, and that the MOUs entered with the Union somehow shield it from a three year statute of limitations and liquidated damages under the FLSA. That argument,

however, is untenable. The defendant never provides any evidence of any effort that it took to comply with the FLSA ─ and the Agency's witnesses testimony demonstrating that they have **neither an understanding of the mandates of the FLSA nor any intention of complying with those mandates** ─ there can be no question that that the Agency has failed to demonstrate good faith. Therefore, an award of liquidated damages equal to the backpay remains mandatory. *See e.g. Havrilla, et al. v. United States*, 125 Fed. Cl. 454, 466 - 68 (2016)  (awarding liquidated damages where the government could not demonstrate reasonable grounds for believing that its' policies complied with the FLSA where there was no evidence of adequate FLSA training, no legal analysis of FLSA violation prior to the lawsuit nor factual investigation performed).

The MOU provides that:

If the assignment is located away from the official duty station within the local commuting area (i.e., outside hospital), time spent traveling will not be considered hours of work, unless the employee is required to drive a government vehicle *or perform work while traveling*."

Ex. 5 (emphasis supplied). Indeed, the defendant willfully violated the FLSA when a management official told Lieutenants"[i]t has come to light that staff who have been assigned to a post at the local hospital are being compensated to travel to/from the hospital. **This practice has to stop immediately**." See e.g., Ex. 7 (bold in original); *See also* Piersen Exhibit 9 ("Just a reminder, when hiring overtime, ensure staff are not getting paid to travel to and from the hospital."). As demonstrated above, travel between worksites as part of the continuous workday is compensable work. The MOU specifically contemplates just such a scenario, and the parties specifically agreed to this exception in the MOU - that should the employees perform work while traveling to an assignment away from the duty station, specifically referencing outside hospital, that time must be compensated. When the travel time is between worksites as part of the continuous workday, that time must be counted as hours of work and is thus compensable under

the MOU and the law. Notably, while the defendant focuses on the exception for employees driving government vehicles as being compensable under the MOU, they never provide any examples of a time when an employee may be performing work while traveling to an outside assignment under the MOU. Instead, the defendant again raises the tired argument that there is no evidence that employees traveling between worksites during the continuous workday are performing work. The defendant never investigated or even considered the continuous workday requirements under the FLSA. For these reasons, the defendant's actions (or lack of actions) does not reach the requisite level of good faith and reasonableness to avoid an otherwise mandatory award of liquidated damages, and indeed demonstrates that the defendant's FLSA violation was willful.

## III.    CONCLUSION

For the above reasons, and the reasons stated in the Plaintiffs' Memorandum for Partial Summary Judgment, the plaintiffs respectfully requests that the Court deny the defendant's Motion for Summary Judgment, and grant the plaintiffs' Motion for Partial Summary Judgment, finding the defendant liable for violating the FLSA and Title 5 for not compensating plaintiffs for travel between worksites that are part of the continuous workday. The plaintiffs also request that the Court award liquidated damages for the FLSA violations and find the defendant's violation of the FLSA to be willful requiring a three-year statute of limitations. The plaintiffs also respectfully request that the Court award the plaintiffs' reimbursement for mileage for this travel. Once granted, the parties can work to determine the amount of damages owed the plaintiffs for the defendant's violations of the FLSA and Title 5, as well as mileage reimbursement.

September 11, 2020                          _s/ David Ricksecker_____
                                           David Ricksecker
                                           MCGILLIVARY STEELE ELKIN LLP
                                           1101 Vermont Ave., N.W.
                                           Suite 1000
                                           Washington, D.C. 20005
                                           (202) 833-8855 (Telephone)
                                           dr@mselaborlaw.com
                                           Counsel of Record

## **CERTIFICATE OF SERVICE**

I certify that the foregoing Plaintiffs' Reply and Opposition to Defendant's Motion for

Summary Judgment were served via electronic filing on September 11, 2020 to counsel for

defendant United States:


**Lauren Moore**
Trial Attorney
United States Department of Justice
Civil Division, Commercial Litigation Branch
PO Box 480, Ben Franklin Station
Washington, DC 20044
Email: Lauren.Moore@usdoj.gov


/s/David Ricksecker
David Ricksecker